# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CELESTE R. KILBURN,
Plaintiff,

Case No. 1:17-cv-603
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**ORDER**

Plaintiff Celeste R. Kilburn brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

denying her applications for disability insurance benefits (DIB) and supplemental security

income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 15) and the

Commissioner's response in opposition (Doc. 16).

## I. Procedural Background

Plaintiff filed her applications for DIB and SSI in March 2014, alleging disability since

May 3, 2012, due to lupus, herniated discs, sciatic nerve pain, vitamin D deficiency, fibroids,

fibromyalgia, myositis, anxiety, and depression. Plaintiff's applications were denied initially and

upon consideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing

before administrative law judge (ALJ) Anne Shaughnessy. Plaintiff and a vocational expert

(VE) appeared and testified at the ALJ hearing. On August 3, 2016, the ALJ issued a decision

denying plaintiff's applications. Plaintiff's request for review by the Appeals Council was

denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th

Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The [plaintiff] has not engaged in substantial gainful activity since May 3, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: systemic lupus erythematosus (SLE), degenerative disc disease of the lumbar spine, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she cannot climb ladders, ropes, or scaffolds. The [plaintiff] can occasionally stoop and crawl. She should avoid concentrated exposure to extreme cold or vibration, and even moderate exposure to hazards such as machinery and heights. The [plaintiff] is capable of carrying out simple to moderately complex tasks in a static and structured work setting that does not undergo frequent change. She is also capable of superficial contact with the general public, but should not be placed in a rapidly changing work environment. She can only work in an environment where necessary changes occur infrequently, and are adequately and easily explained to her ahead of time.

6. The [plaintiff] is unable to perform any of her past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1967, and she was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The [plaintiff] subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 3, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g).

(Tr. 13-21).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] Plaintiff has past relevant work as a care provider. (Tr. 20).

[2] The ALJ relied on the VE's testimony to find that that plaintiff could perform the requirements of representative sedentary, unskilled occupations such as lens inserter (75 jobs regionally, 60,000 jobs nationally), addresser (260 jobs regionally and 36,000 jobs nationally), and table worker (600 jobs regionally and 116,000 jobs nationally). (Tr. 20-21, 206).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ failed to properly weigh the opinions of her treating psychiatrist; (2) the ALJ erred in her analysis of plaintiff's credibility based on non-compliance with recommended medical treatment; and (3) the ALJ failed to properly consider the plaintiff's residual functional capacity by not including limitations resulting from her fibromyalgia and hand impairments. (Doc. 15).

**1. Whether the ALJ erred in weighing Dr. Eggerman's assessments**

**A. <u>Mental health evidence of record</u>**

Plaintiff began treatment with Dr. Kevin Eggerman, M.D., in April 2012. At her first appointment, plaintiff reported that she "need[ed] to get a handle on [her] nerves." (Tr. 451). She also reported that she "worries a lot" and experiences panic attacks. (*Id.*). She had been prescribed medication for her anxiety and had no inpatient hospitalizations for psychological problems. (*Id.*). Dr. Eggerman confirmed the diagnosis of anxiety. (Tr. 453).

The record shows that Dr. Eggerman continued to treat plaintiff through at least June 2016. (Tr. 434-53, 603-34, 1434-39). Throughout 2012 and 2013, Dr. Eggerman's progress notes indicated that plaintiff's anxiety was improving, she was experiencing infrequent panic attacks, and therapy was going well. (Tr. 437-449). At an appointment in December 2013, plaintiff reported she was considering reopening her disability claim and that her pay and hours had been unexpectedly cut. (Tr. 437). At her next visit in March 2014, plaintiff reported two panic attacks a week, worries, and high anxiety. (Tr. 435). Plaintiff reported that her lupus and physical conditions were contributing to her anxiety. (*Id.*). During the mental status examination, plaintiff was cooperative, but anxious and tense. (*Id.*). She had a fair range affect and did not demonstrate tearfulness, suicidal ideation, or homicidal ideation. (*Id.*). In September 2014, plaintiff reported no acute mood symptoms. (Tr. 614). During an April 2015 visit, plaintiff reported no mood changes and that she continued in regular therapy. (Tr. 1438).

In February 2016, plaintiff reported no real changes in her mood. (Tr. 1436). She stated that her stress and anxiety levels were very high. (*Id.*). In June 2016, plaintiff reported that her anxiety remained high, but it was not significantly worse. (Tr. 1434). Dr. Eggerman noted that plaintiff continued therapy, but she inconsistently attended due to financial reasons. (*Id.*).

Dr. Eggerman issued four assessments on plaintiff's mental capacity. The first assessment was co-authored with plaintiff's therapist, Gerri Wayland, on August 28, 2014. (Tr.

562-63). Dr. Eggerman and Ms. Wayland opined that plaintiff had occasional limitations in the following areas: maintaining her attention and concentration for two-hour segments, responding appropriately to changes in routine settings, maintaining regular attendance and being punctual within customary tolerances, dealing with work stress, completing a normal work day and work week without interruption from psychologically-based symptoms, and leaving home on her own. (*Id.*). They identified plaintiff's diagnosis as generalized anxiety disorder. (*Id.*).

Dr. Eggerman completed another mental functional capacity assessment on April 21, 2015. (Tr. 1425). Dr. Eggerman opined that plaintiff was markedly limited in her ability to carry out detailed instructions and her ability to maintain attention and concentration for extended periods, and moderately limited in several other areas. (*Id.*). Dr. Eggerman opined that plaintiff was "unemployable" and her mental functional limitations were expected to last 12 months or more. (*Id.*).

On February 17, 2016, Dr. Eggerman and Ms. Wayland completed a third medical source statement on plaintiff's mental capacity. (Tr. 1426-27). They indicated that plaintiff had a rare ability to perform the following activities: maintain concentration and pace for extended periods of 2-hour segments, respond appropriately to changes in routine settings, maintain regular attendance and be punctual within customary tolerance, work in coordination with or proximity to others without being distracted, deal with work stress, and complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 1426). They also opined that plaintiff had a rare ability to understand, remember and carry out complex job instructions, manage funds/schedules, and leave home on her own. (Tr. 1427). Dr. Eggerman and Ms. Wayland identified plaintiff's diagnosis as generalized anxiety disorder and indicated

that she had been under their care since May 2012, but the care was inconsistent due to plaintiff's limited finances. (*Id.*). Dr. Eggerman and Ms. Wayland further noted: "[c]lient believes that her anxiety impedes her ability to leave the house and maintain a consistent and focused work pattern." (*Id.*).

In June 2016, Ms. Wayland and Dr. Eggerman completed another medical source statement on plaintiff's mental capacity. (Tr. 1441-42). The findings from the February 2016 assessment remained relatively unchanged. (*Id.*). Ms. Wayland and Dr. Eggerman added: "client continues to believe that her anxiety impedes her ability to go in public and be focused at work." (Tr. 1442). They also noted that plaintiff had only left her house twice since the February 2016 visit. (*Id.*).

### B. **The parties' arguments**

Plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinions of Dr. Eggerman, M.D, who was her treating psychiatrist since April 2012. (Doc. 15 at 13). Plaintiff contends that Dr. Eggerman noted her problems with maintaining attention and concentration for extended periods, as well as her rare ability to leave home on her own. (*Id.* at 14-15). Plaintiff argues that the ALJ ignored the worsening of her anxiety over time by focusing on a mild assessment completed by Dr. Eggerman in 2014 to question the validity of more restricted assessments completed in 2015 and 2016. (*Id.* at 15). Plaintiff argues that the ALJ failed to give good reasons to discount Dr. Eggerman's opinions because no inconsistency exists between his opinions, which noted a worsening of plaintiff's anxiety over time. (*Id.* at 15-16). Plaintiff also contends that the ALJ erred in failing to thoroughly discuss the weight given Dr. Eggerman's opinions after she declined to give the opinions controlling weight. (*Id.* at 16).

Finally, plaintiff contends that the ALJ's RFC determination does not account for certain restrictions assessed by Dr. Eggerman, which the ALJ indicated that she considered. (*Id.*).

In response, the Commissioner contends that the ALJ adequately considered and assessed the opinions of Dr. Eggerman from August 2014, April 2014, February 2016, and June 2016. (Doc. 16 at 5). The Commissioner maintains that the ALJ properly found that Dr. Eggerman's assessments from 2015 and 2016 indicated much greater restrictions than previous assessments and that "this inconsistency in the opinions detracted from the weight she ultimately assigned to them." (*Id.* at 7). The Commissioner contends that the ALJ properly noted that Dr. Eggerman's 2014 opinion was markedly different than his opinions in 2015 and 2016, especially in light of objective clinical findings that did not support these findings and instead suggested that plaintiff was doing well in therapy and had no acute mood symptoms. (*Id.* at 8) (citing Tr. 437, 604-05, 1435-37). The Commissioner also argues that the ALJ's RFC limitation regarding plaintiff's ability to carry out simple to moderately complex tasks was consistent with Dr. Eggerman's opinions that plaintiff could rarely perform complex work and was only moderately limited with respect to understanding and remembering detailed instructions. (*Id.* at 8-9).

### C. **The ALJ's decision**

The ALJ declined to give controlling weight to Dr. Eggerman's assessments. Instead, the ALJ afforded partial weight to these assessments, finding that the limitations were inconsistent "despite Dr. Eggerman's status as an ongoing treating psychiatrist for the [plaintiff]." (Tr. 18-19). The ALJ afforded "great weight" to some of Dr. Eggerman's findings, including that plaintiff is capable of carrying out simple to moderately complex tasks in a static and structured work setting that does not undergo frequent change; she is capable of superficial contact with the general public; she should not be placed in a rapidly changing work environment; and she can

only work in an environment where necessary changes occur infrequently and are adequately and easily explained to her ahead of time. (Tr. 19).

### D. Resolution

The Commissioner's regulations establish a hierarchy of acceptable medical source opinions. *Snell v. Comm'r of Soc. Sec.*, 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013); 20 C.F.R. §§ 404.1527, 416.927. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). The opinions of non-examining physicians are afforded the least deference under the regulations. *Woodcock v. Comm'r. of Soc. Sec.*, 201 F. Supp.3d 912, 919 (S.D. Ohio 2016). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors

set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

The record substantially reports the ALJ's decision to give Dr. Eggerman's assessments partial weight. The extreme functional restrictions assessed by Dr. Eggerman are not consistent with his own progress notes or with the other medical evidence of record.

The ALJ gave "good reasons" for declining to afford controlling weight to Dr. Eggerman's assessments. The ALJ reasonably concluded that Dr. Eggerman's extreme

assessments from 2016 stating that plaintiff had a rare ability to perform in several areas were not supported by his own progress notes. While Dr. Eggerman treated plaintiff for anxiety and prescribed medication, his treatment notes lend little insight or support into the severity of plaintiff's anxiety and little support into plaintiff's assertion that her anxiety "worsened over time." (*See* Doc. 15 at 16). Throughout 2012 and 2014, plaintiff reported panic attacks, worries, and high anxiety. (Tr. 434-53, 603-34). However, beginning in 2015, plaintiff reported no changes in her mood and that she continued to engage in regular therapy. (Tr. 1434-39). In February 2016, while plaintiff reported to Dr. Eggerman that her stress and anxiety remained "very high," she reported no real changes in her mood since the last visit. (Tr. 1434-36). By June 2016, plaintiff reported that her anxiety was "not significantly worse." (Tr. 1434). Dr. Eggerman offered no explanation for his drastic change of opinion in 2016, especially in light of plaintiff's self-reports that her anxiety was not significantly worse. "[T]he ALJ is not bound by the disability opinion of a treating physician who provides conflicting opinions throughout the relevant time period, particularly when the treating physician provided no explanation for such contradictions." *Molen v. Comm'r of Soc. Sec.*, No. 3:12-cv-286, 2013 WL 3322300, at \*10 (S.D. Ohio July 1, 2013) (Black, J.) (citing *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987)). Moreover, Dr. Eggerman did not cite to any objective clinical findings in support of his assessments and relied solely on plaintiff's subjective reports, namely that she rarely leaves the house and believes that her anxiety impedes her ability to go out in public and stay focused at work.

While the ALJ's decision does not reflect an extensive analysis of the regulatory factors set forth in 20 C.F.R. § 416.927(c)(2)-(6), the regulations require only that an ALJ decision include "'good reasons . . . for the weight give[n] [to the] treating source's opinion'—not an

exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802,

804 (6th Cir. 2011) (citing *Wilson*, 378 F.3d at 547). *See also Guinn v. Comm'r of Soc. Sec.*, 555

F. Supp.2d 913, 920 (S.D. Ohio 2008) (ALJ's failure to mention regulatory factors may qualify

as harmless error if the ALJ provided "specific reasons for the weight given to the treating

source's medical opinion, supported by the evidence in the case record, and [was] sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight.") (quoting *Wilson*, 378 F.3d at 544).

Here, the ALJ's decision reflects consideration of the regulatory factors, albeit not explicitly.

The ALJ noted that Dr. Eggerman was plaintiff's "ongoing treating psychiatrist." (Tr. 19). The

ALJ discussed the consistency of Dr. Eggerman's four assessments. The Sixth Circuit has held

that an ALJ "is not bound by conclusory statements of doctors, particularly where they are

unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524,

528 (6th Cir. 1992)). Moreover, given that the ALJ appropriately weighed Dr. Eggerman's

assessments, the ALJ did not err in her RFC determination by finding that plaintiff is "capable of

carrying out simple to moderately complex tasks in a static and structured work setting that does

not undergo frequent change." (Tr. 17). Accordingly, the ALJ gave "good reasons" for

affording partial weight to Dr. Eggerman's opinions. Plaintiff's first assignment of error is

overruled.

## 2. Whether the ALJ erred in evaluating plaintiff's subjective complaints

Plaintiff argues that the ALJ erred in finding her testimony to be less than credible due to

her failure to pursue recommended medical treatments. (Doc. 15 at 17). Plaintiff contends that

the ALJ ignored that she refused recommended treatments because of her anxiety. (*Id.*).

13

Plaintiff contends that her psychological conditions are good reasons for not receiving recommended treatments, including injections, surgeries, and taking Plaquenil for her Lupus. (*Id.* at 18).

In response, the Commissioner argues that the ALJ complied with Social Security Ruling 16-3p and carefully considered the objective medical evidence, opinion evidence, clinical findings, plaintiff's symptoms and complaints of pain, treatment received, and activities of daily living in evaluating plaintiff's subjective complaints. (Doc. 16 at 10). The Commissioner contends that the lack of treatment was merely one factor that the ALJ considered in assessing plaintiff's subjective symptoms. (*Id.* at 11).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). *See also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

In addition, the regulations and SSR 16-3p[3] describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 405.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-8.

The ALJ properly evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. § 405.1529(c) and SSR 16-3p. The ALJ determined that plaintiff had medically determinable physical and mental impairments that could reasonably be expected to cause her alleged symptoms. (Tr. 17). However, the ALJ found that plaintiff's statements as to the intensity, persistence and limiting effect of those symptoms were not entirely consistent with both the objective medical evidence and other evidence in the record. (*Id.*). In making this determination, the ALJ thoroughly evaluated and relied on: (1) the lack of supporting objective

---

[3] The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision here, which was issued on August 3, 2016. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (report and recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

medical evidence; (2) the conservative treatment plaintiff had received; (3) inconsistent

statements between plaintiff's testimony and statements made to her treating psychiatrist; and (4)

the medical opinions of record. The ALJ noted that although plaintiff has confirmed diagnoses

of Lupus and anxiety, progress notes documented that her conditions were not as limiting as

alleged. (Tr. 17). The ALJ also examined plaintiff's daily activities and complaints of pain. (Tr.

14-15).

The ALJ also relied on plaintiff's lack of compliance with recommended treatment. With

respect to plaintiff's Lupus, the ALJ noted that plaintiff was reluctant to start medication due to

anxiety regarding potential side effects. (Tr. 17). With respect to plaintiff's back pain and

confirmed diagnosis of spondylolisthesis, the ALJ stated: "the claimant's medical treatment for

back pain has been conservative and has not involved surgery. A physician recommended that

she receive medication injections, but she declined." (*Id.*). As to plaintiff's anxiety, the ALJ

recognized that plaintiff undergoes therapy and takes prescribed medication for her mental

status. (*Id.*). The ALJ further stated:

> The record reflects that the claimant has declined certain avenues of medical care
> including recommended back surgery, recommended injections, and recommended
> medications for [Lupus]. If the claimant were truly as limited by her medical
> conditions as she stated in her testimony, it would be reasonable to assume that she
> would pursue any recommended course of treatment recommended by her
> attending medical professionals. The fact that the claimant has not done so is
> inconsistent with her allegation of significantly limiting symptomatology.

(Tr. 18).

Plaintiff challenges the ALJ's consideration of her non-compliance with recommended

treatment, claiming that her anxiety precluded her from pursuing treatment. SSR 16-3p provides

that an ALJ may consider several reasons why a plaintiff may not have pursued treatment,

including cost, religious beliefs, and mental impairments. The ALJ should also "consider and

address reasons for not pursuing treatment that are pertinent to an individual's case." SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). *See also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) ("SSR 16-3p does not alter the rule [from the rescinded SSR 96-7p] that the ALJ should consider 'possible reasons' why a claimant failed to seek medical treatment 'consistent with the degree of his or her complaints' before drawing an adverse inference from the claimant's lack of medical treatment."). Here, the ALJ properly considered plaintiff's anxiety, as well as the assessments and medical records from her treating psychiatrist Dr. Eggerman. Other than pointing to one medical record documenting her reluctance to take medication for Lupus due to her anxiety, plaintiff has not established that her noncompliance with treatment is attributable to her anxiety. The Court finds that the ALJ adequately considered plaintiff's subjective statements as to her symptoms and functional limitations, along with the objective and other medical evidence and the medical opinions of record. (Tr. 14-18). *See Newman v. Colvin*, No. 1:15-cv-639, 2017 WL 685685, at *7 (S.D. Ohio Feb. 1, 2017) (holding that ALJ properly considered the requisite factors in making his credibility determination because he considered plaintiff's subjective statements, objective medical evidence, plaintiff's activities of daily living, and the record medical opinions) (report and recommendation), *adopted*, 2017 WL 680632 (S.D. Ohio Feb. 21, 2017); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) ("[t]he ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence."). Plaintiff's second assignment of error is overruled.

### 3. Whether the ALJ properly considered plaintiff's fibromyalgia

As her third assignment of error, plaintiff argues that the ALJ erred in failing to assess whether her fibromyalgia constitutes a severe impairment and failing to include restrictions to

17

account for her fibromyalgia in the RFC. (Doc. 15 at 18-19). Plaintiff maintains that her doctors have documented that fibromyalgia forms the basis for some of her pain complaints. (*Id.* at 19) (citing Tr. 471, 509). Plaintiff maintains that she also testified to aching in her arms and difficulty using her right hand to grasp objects. (*Id.*). Plaintiff states that the ALJ erred in failing to credit the opinions of Dr. Patel and Cynthia Lear that she was limited to no more than occasional fine or gross manipulation. (*Id.*).

In response, the Commissioner contends that plaintiff's fibromyalgia improved after she was prescribed low doses of Celexa medication. (Doc. 16 at 12) (citing Tr. 471, 540). The Commissioner also argues that the ALJ expressly addressed Dr. Patel's opinion that plaintiff had a limited ability to engage in fine and gross manipulation, but the ALJ rejected this limitation because Dr. Patel did not cite specific medical factors establishing a basis for this restriction. (*Id.* at 13) (citing Tr. 18, 553). The Commissioner further argues that the ALJ appropriately considered the opinion of Ms. Lear and assigned it little weight. (*Id.*) (citing Tr. 19, 1457). Finally, the Commissioner maintains that even if the ALJ did not directly address plaintiff's fibromyalgia, such an error should be considered harmless because the ALJ did consider plaintiff's upper extremity limitations and none of the state agency reviewing physicians who considered the fibromyalgia diagnosis opined that plaintiff had manipulation limitations in her upper extremities. (*Id.* at 13-14).

The ALJ found that the following physical impairments were "severe impairments" at step two of the sequential evaluation process: systemic lupus erythematosus (SLE), degenerative disc disease of the lumbar spine, and anxiety. (Tr. 14). The ALJ did not address whether plaintiff's fibromyalgia constituted a severe impairment.

Plaintiff has not shown that the ALJ erred at step two by failing to find that her fibromyalgia was a severe impairment. Plaintiff alleges that the ALJ's finding is unsupported because doctors noted tender points characteristic of fibromyalgia and Dr. Patel and Ms. Lear noted that plaintiff was limited to no more than occasional fine or gross manipulation. (Doc. 15 at 18-21).

The evidence plaintiff cites is insufficient to support a fibromyalgia diagnosis under Social Security Ruling 12-2p, which provides guidance on how the agency develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and how the agency evaluates fibromyalgia in disability claims. SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). SSR 12-2p describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2. Pursuant to the Ruling, "FM [fibromyalgia] is an MDI [medically determinable impairment] when it is established by appropriate medical evidence." *Id.* If a physician diagnoses fibromyalgia, the agency will "review the physician's treatment notes to see if they are consistent with the diagnosis of FM. . . ." *Id.*

The agency will find that a person has a medically determinable impairment of fibromyalgia if a physician diagnosed fibromyalgia and provides the evidence described under § II.A or § II.B of the Ruling, and the physician's diagnosis is not inconsistent with the other evidence in the individual's case record. *Id.* Under § II.A, the agency "may find that a person has an MDI of FM if he or she has all three of the following:

1. A history of widespread pain - that is, pain in all quadrants of the body . . . and axial skeletal pain . . . - that has persisted (or that persisted) for at least 3 months . . . [and which] may fluctuate in intensity and may not always be present.

2. At least 11 positive tender points on physical examination . . . [which] must be found bilaterally . . . and both above and below the waist [in specified locations using a specific testing method]. . . .

3. Evidence that other disorders that could cause the symptoms or signs were excluded. . . ."

*Id.*, at *2-3.

A person may be found to have an MDI of FM under § II.B. if she has all three of the following criteria:

1. A history of widespread pain (see section II.A.1);

2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue. . . .; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded[.]

*Id.*, at *3.

Here, plaintiff has not shown that her fibromyalgia constitutes an MDI under the above criteria. The medical evidence on plaintiff's fibromyalgia is sparse. Plaintiff visited John Houk, M.D., on March 12, 2013, who found on examination, positive scattered tender points. He assessed fibromyalgia and noted plaintiff's fibromyalgia was "much improved on Celexa." (Tr. 470-71). On February 25, 2014, plaintiff saw rheumatologist, Rina Mina, M.D., and complained of diffuse achy pain; leg/arm muscle pain, especially at night; tingling in toes, fingers, and hands; muscle tenderness; poor sleep; and no regular physical activity. Plaintiff reported that she recently started Cymbalta for anxiety, which improved her pain. (Tr. 507). On examination, Dr. Mina found multiple tender points and problems with straight leg raising test especially on the left side, and she assessed fibromyalgia. (Tr. 508-09). This medical evidence present in the

record does not substantiate plaintiff's claim that the ALJ was bound to find her fibromyalgia as a "severe impairment" under SSR 12-2p.

Moreover, even if the ALJ erred in not finding fibromyalgia to be a severe impairment, any error would be harmless. Plaintiff contends her fibromyalgia was a source of some of her arm pain and difficulty grasping with the right and the ALJ erred by not limiting the use of plaintiff's hands in work activity in accordance with the limitations set forth by Dr. Patel and Cynthia Lear, plaintiff's physical therapist. In August 2014 during a second visit, Dr. Patel completed a medical source statement as to plaintiff's physical capacity and opined that plaintiff could lift up to 10 pounds, stand for four hours total per day, and sit for four hours total per day. (Tr. 552-53). She also opined that plaintiff could sit, stand, or walk for an hour at a time, could occasionally balance or kneel, and could rarely climb, stoop, crouch, or crawl. Dr. Patel stated that plaintiff could occasionally reach, push, pull, or engage in fine and gross manipulation; she would be restricted by heights and moving machinery; and she would to elevate her legs at a 45-degree angle at will. (Tr. 553).

Cynthia Lear, a physical therapist, evaluated plaintiff and completed a medical source statement on plaintiff's physical capacity on June 21, 2016. Ms. Lear determined that plaintiff could only lift/carry 5 pounds occasionally, and no weight frequently, due to problems with her grip. (Tr. 1456). Ms. Lear also found plaintiff is limited to no more than occasional fine or gross manipulation. (Tr. 1457).

The ALJ assigned Dr. Patel's assessment "some weight" and Ms. Lear's assessment "little weight."

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. §§ 404.1527(e)(2),

416.927(e)(2).[4] "Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner." *Profitt v. Comm'r. of Soc. Sec.*, No. 1:13-cv-679, 2014 WL 7660138, at *6 (S.D. Ohio Dec. 12, 2014) (Report and Recommendation), *adopted*, 2015 WL 248052 (S.D. Ohio Jan. 20, 2015) (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010)). *See also* 20 C.F.R. §§ 404.1546(c), 416.946(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). An ALJ is not required to adopt precise limitations offered by a single medical source in assessing a claimant's RFC. *Ford*, 114 F. App'x 194 (affirming district court decision upholding ALJ's finding of RFC for light work with restrictions, despite absence of a medical source opinion assessing plaintiff as capable of light work). However, the "ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (citations omitted); *Hammock v. Comm'r of Soc. Sec.*, No. 1:12-cv-250, 2013 WL 1721943, at *8 (S.D. Ohio Apr. 22, 2013) (Report and Recommendation), *adopted*, 2013 WL 4080714 (S.D. Ohio Aug. 13, 2013).

The Court finds that the ALJ adequately considered and weighed the opinions of Dr. Patel and Cynthia Lear in formulating the RFC. The ALJ determined that Dr. Patel's assessment was generally consistent with the determination that plaintiff was limited to sedentary work. However, the ALJ assigned Dr. Patel's assessment only "some weight" because Dr. Patel's records reflected that plaintiff was "doing well" with regard to her back pain and sciatica; she had only "mild activity" with respect to rash and serologies associated with lupus, including negative laboratory findings; and she did not cite specific medical factors to support her finding

---

[4] Sections 404.1527 and 416.927 were amended effective March 27, 2017, but the prior versions of the regulations apply here.

that plaintiff has a limited ability to engage in fine and gross manipulation. (Tr. 18). The ALJ reasonably considered the consistency of Dr. Patel's opinion with her own progress notes, as well as the supportability of Dr. Patel's opined manipulation limitations.). *See* 20 C.F.R. § 404.1527(c) (supportability and consistency are factors to be balanced in deciding what weight to give a medical opinion).

The ALJ reasonably afforded Ms. Lear's assessment "little weight" because she is not an acceptable medical source, she indicated restrictions greater than reported by plaintiff in her testimony, and the record as a whole did not support the restrictions imposed by Ms. Lear. (Tr. 19). Only an "acceptable medical source" can give a medical opinion. SSR 06-03p, 2006 WL 2329939, at *2. Because a physical therapist is not considered an "acceptable medical source" under the regulations, 20 C.F.R. § 404.1527(f)(2); SSR 06-03p, 2006 WL 2329939, at *2, an ALJ is not required to give any special deference to a physical therapist's report. *Nierzwick v. Comm'r of Soc. Sec*, 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source). As such, the ALJ was not required to give any special weight or deference to Ms. Lear's assessment. The ALJ nonetheless fully evaluated Ms. Lear's assessment and gave it "little weight" for reasons she thoroughly discussed in her written decision. (Tr. 19). Plaintiff has shown no error in this regard.

Plaintiff has not shown that the ALJ erred in fashioning the RFC by failing to incorporate the specific findings assessed by Dr. Patel and Ms. Lear on her limited ability to engage in fine or gross manipulation. Plaintiff has not pointed to any other evidence in the record to support greater restrictions in the use of her hands than those found by the ALJ. The ALJ properly

assessed plaintiff's physical RFC and substantial evidence supports that assessment.

Accordingly, plaintiff's third assignment of error is overruled.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner is **AFFIRMED** and this case is closed on the docket of the Court.

Date: 9/29/18

Karen L. Litkovitz
United States Magistrate Judge